IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-154-D

|  |  |  |
|---|---|---|
| STEVEN JOHN MULLENIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| THE BUREAU OF ALCOHOL, | ) | |
| TOBACCO, FIREARMS, and | ) | |
| EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |

On April 25, 2007, plaintiff Steven John Mullenix ("Mullenix" or "plaintiff"), proceeding

pro se, sued the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("the ATF" or "defendant").

Plaintiff is a federally-licensed firearms dealer, and alleges that the ATF arbitrarily denied him

permission to import a reproduction of a World War II-era German machinegun. On March 6, 2008,

the ATF moved for summary judgment. Plaintiff responded on April 23, 2008, and the ATF replied

on May 7, 2008. For the reasons discussed below, the ATF's motion for summary judgment is

granted.

I.

Title 18, section 925(d) of the United States Code provides that certain types of firearms may

be imported into the United States. See 18 U.S.C. § 925(d).[1] Among these are firearms "generally

---

[1] Section 925(d) provides:

The Attorney General shall authorize a firearm or ammunition to be imported or
brought into the United States or any possession thereof if the firearm or
ammunition—
    (1) is being imported or brought in for scientific or research purposes, or is for
use in connection with competition or training pursuant to chapter 401 of title 10;

recognized as particularly suitable for or readily adaptable to sporting purposes." Id. § 925(d)(3).

Under section 925(d), a firearm may be conditionally imported into the United States for the purpose

of determining whether it qualifies as any of the types of importable firearms listed in section 925.

Id. § 925(d).

Plaintiff is a federally-licensed firearms dealer. Def.'s Mem. in Supp. of Mot. for Summ. J.

2 [hereinafter "Def.'s Mem."]; cf. Compl. 2. Plaintiff conditionally imported a "BD44" firearm—a

replica of a World War II-era German machinegun—pursuant to section 925(d). See Compl. 1 &

Ex. 1. Plaintiff desired to import BD44s in order to sell them to military re-enactment enthusiasts

who seek to use BD44s to portray the German Wehrmacht in re-enacting World War II battles. See

id. at 1–2.

On January 5, 2007, plaintiff submitted his conditionally-imported BD44 to the ATF's

Firearms Technology Branch in Martinsburg, West Virginia to determine whether he was permitted

---

(2) is an unserviceable firearm, other than a machinegun as defined in section 5845(b) of the Internal Revenue Code of 1986 (not readily restorable to firing condition), imported or brought in as a curio or museum piece;

(3) is of a type that does not fall within the definition of a firearm as defined in section 5845(a) of the Internal Revenue Code of 1986 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes, excluding surplus military firearms, except in any case where the Attorney General has not authorized the importation of the firearm pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled; or

(4) was previously taken out of the United States or a possession by the person who is bringing in the firearm or ammunition.

The Attorney General shall permit the conditional importation or bringing in of a firearm or ammunition for examination and testing in connection with the making of a determination as to whether the importation or bringing in of such firearm or ammunition will be allowed under this subsection.

18 U.S.C. § 925(d).

to import the firearm under section 925(d)(3). See id. at 1 & Ex. 1. On January 16, 2007, the ATF determined that the BD44 was not importable under section 925(d)(3) because it was not "generally recognized as particularly suitable for or readily adaptable to sporting purposes." See id. at 1 & Ex. 1.

Plaintiff challenges the ATF's decision. Plaintiff argues that the ATF's interpretation of section 925(d)(3) is arbitrary and capricious, and seeks damages for lost income resulting from his inability to sell BD44s to prospective military re-enactors.

II.

Defendant seeks summary judgment. Summary judgment is appropriate when, after considering the record as a whole, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Fed. R. Civ. P. 56(c). The movant initially must demonstrate the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met its burden, the nonmoving party generally may not rely on the allegations or denials in its pleading, but must come forward with specific facts showing a genuine issue for trial. E.g., Anderson, 477 U.S. at 248; Fed. R. Civ. P. 56(e). In considering the motion, the court construes the facts in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). "The summary judgment procedure is particularly appropriate in [a] case[] such as this, in which a district court is asked to review a decision rendered by a federal administrative agency." U.S. Steel Corp. v. Astrue, 495 F.3d 1272, 1279 (11th Cir. 2007) (quotation omitted).

3

A.

In response to defendant's motion for summary judgment, plaintiff maintains that section 925(d), and all other federal gun-control laws, are unconstitutional. See Pl.'s Aff. in Resp. to Def.'s Mot. for Summ. J. 6–10 [hereinafter "Pl.'s Resp."]. Although plaintiff did not plead a Second Amendment claim, the court must liberally construe pro se pleadings. See, e.g., 5 U.S.C. § 706(2)(B); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam); cf. Fed. R. Civ. P. 8(e).

Plaintiff first argues that "[a]ll bans [on gun ownership] are clear unconstitutional infringements to the right to own and bear arms." Pl.'s Resp. 7. The court construes plaintiff's argument as a facial challenge to 18 U.S.C. § 925(d). In District of Columbia v. Heller, the Supreme Court analyzed the Second Amendment and held that there is an individual right to keep and bear arms. Heller, __ U.S. __, __, 2008 WL 2520816, at *11 (June 26, 2008). However, the Supreme Court rejected the notion that the Second Amendment right is unlimited:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right [to keep and bear arms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

Id. at *28. In light of Heller, plaintiff's facial challenge to section 925(d) fails.

Alternatively, plaintiff contends that, although Congress has the power to regulate the individual right to keep and bear arms, "regulation" of that right is limited to reasonable time, place, and manner restrictions. See Pl.'s Resp. 7 ("The Congress maintains [only] the right to *regulate* a right of the people to ensure that only qualified citizens can exercise that right and to ensure public tranquility[] (i.e., prohibiting carrying arms at public assemblies, courts, or regulations for the transfer, lawful ownership, and transport of arms, etc.) . . . ."). According to plaintiff, Congress may not "regulate" his individual right to keep and bear arms by declaring that he may not own certain

4

types of arms, and he may accordingly own almost any type of weapon he chooses (including the BD44) so long as he complies with reasonable time, place, and manner restrictions. See id. at 7–8 ("[N]ever does Congress have the right . . . to ban the ownership of any defensive arm equivalent or superior to that used by the standing armies of the United States.").

Unfortunately for plaintiff, the Supreme Court rejected this argument in Heller. See Heller, 2008 WL 2520816, at *26 (construing United States v. Miller, 307 U.S. 174 (1939), to hold that "the *type of weapon at issue* [a sawed-off shotgun] was not eligible for Second Amendment protection"); id. ("Miller stands . . . for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons."); id. at *27 (finding it a "startling reading" of Miller to suggest "that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional"); id. at *28 ("[T]he right [is] not a right to keep and carry any weapon whatsoever . . . ."). Accordingly, in light of Heller, the court rejects plaintiff's challenge to section 925(d), and rejects plaintiff's claim that the Second Amendment entitles him to possess the BD44 in this case.

B.

Plaintiff next argues that section 925(d)(3) concerns only handguns. Plaintiff provides a historical narrative contending that, in 1968 when Congress passed section 925(d), only a few semiautomatic rifles were being imported, and Congress therefore could not possibly have intended section 925(d) to apply to semiautomatic rifles such as the BD44. See Pl.'s Resp. 10–13. According to plaintiff, "[t]he lack of semiautomatic rifle availability and the fact that the [ATF implementation] panel spent its time almost exclusively on the handgun issues reveal[] the problem that Congress . . . intended to address, no matter how broad the language, was *handgun crime*." Id. at 12. Liberally construing plaintiff's filings, the court interprets plaintiff's argument to invoke the intent exception to the plain meaning rule.

A court must apply a clear, unambiguous statute as written. See, e.g., Barnhart v. Sigmon Coal. Co., 534 U.S. 438, 450 (2002). However, there are "two narrow exceptions" to the plain meaning rule. See In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004). Plaintiff here invokes the exception premised on legislative intent. This exception "exists only when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent." Id. (quotation omitted). This exception applies only in "exceptionally rare" cases, and requires the party challenging the plain meaning of a statute to demonstrate that Congress intended a different meaning. Id. at 265, 269. This is a "stringent mandate." Id. at 269. Under this exception, ambiguity in the legislative history does not overcome the statute's plain language. See, e.g., In re First Merch. Acceptance Corp., 198 F.3d 394, 400–03 (3d Cir. 1999).

Section 925(d)(3) provides in relevant part: "The Attorney General shall authorize a firearm . . . to be imported or brought into the United States or any possession thereof if the firearm . . . is of a type . . . generally recognized as particularly suitable for or readily adaptable to sporting purposes, excluding surplus military firearms . . . ." 18 U.S.C. § 925(d)(3). The plain language of section 925(d)(3) makes no distinction between handguns and semiautomatic rifles. Moreover, plaintiff cites no legislative history showing that Congress intended to limit section 925(d)(3) to handguns. Rather, as defendant notes, Congress repeatedly stated its desire to give the executive branch broad discretion to determine what firearms were suitable for importation under section 925(d). See, e.g., Def.'s Mem. Ex. E at 4–7 (1998 ATF study cataloguing legislative history of section 925(d)). Plaintiff fails to present evidence sufficient to meet the extraordinary burden

6

required to overcome the plain language of section 925(d)(3).[2]

C.

Finally, plaintiff challenges the ATF's determination that the BD44 is not importable under section 925(d) as unreasonable. See Compl. 1–2; Pl.'s Resp. 13–23. Plaintiff's complaint arises under the Administrative Procedures Act ("APA"). Under the APA, "[a] person . . . adversely affected or aggrieved by agency action . . . is entitled to judicial review [of that action]." 5 U.S.C. § 702. A reviewing court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. § 706(2)(A). This standard of review is narrow. See Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989). According to the Supreme Court,

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The court may not substitute its judgment for that of the agency, and must affirm if the agency's decision is rational, based on consideration of the relevant factors, and adequately explained. See id. at 42–44; see also Ohio River Valley Envtl. Coal., Inc. v. Kempthorne, 473 F.3d 94, 102–03 (4th Cir. 2006).

---

[2] Plaintiff also argues that Congress' decision in 2004 to allow the assault weapons ban formerly contained in 18 U.S.C. §§ 922(v) and (w) to expire evinces Congress' intent that he should be allowed to import the BD44 under section 925(d)(3). See Pl.'s Resp. 23–24. The court rejects this argument for three reasons. First, Congress' decision not to renew a wholly separate section of the U.S. Code is not "legislative history" evincing Congress' intent with respect to section 925(d)(3). Second, such "evidence" is insufficient to meet the extraordinary burden required to overcome the plain meaning of section 925(d)(3). Finally, Congress' actions concerning sections 922(v) and (w) do not alter Congress' expressed intent to give the ATF broad discretion in determining what firearms are importable under section 925(d).

7

"The agency's actions need not be the best or most reasonable, and the court may not set the [agency]'s decision aside 'simply because the court is unhappy with the result reached.'" <u>Alliance for Legal Action v. U.S. Army Corps of Eng'rs</u>, 314 F. Supp. 2d 534, 541 (M.D.N.C. 2004) (quoting <u>Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.</u>, 435 U.S. 519, 558 (1978)). Moreover, the party challenging the agency's action bears the burden of proving that it was arbitrary and capricious. <u>E.g.</u>, <u>Fort Sumter Tours, Inc. v. Babbitt</u>, 66 F.3d 1324, 1336 (4th Cir. 1995).

The record reflects that the ATF carefully considered the issues posed by section 925(d)(3) and concluded that semiautomatic rifles which (1) have the ability to accept detachable, large capacity magazines; (2) are semiautomatic versions of machineguns; and (3) are chambered to accept centerfire rounds having a length of 2.25 inches or less generally are not "particularly suitable for or readily adaptable to sporting purposes" under section 925(d)(3). <u>See</u> Def.'s Mem. Exs. D & E; <u>see also</u> Compl. Ex. 1. Because plaintiff's BD44 has the ability to accept a 30-round detachable magazine, is a semiautomatic copy of the original German MP42 family of machineguns, and is chambered to accept centerfire rounds of less than 2.25 inches in length, the ATF found that plaintiff could not import the BD44. <u>See</u> Compl. Ex. 1. Plaintiff vigorously disputes this determination.

Primarily, plaintiff argues that the ATF's interpretation of "sporting purposes" under section 925(d)(3) is too narrow, because some firearms that meet the three-part test listed above may nonetheless be used for sporting purposes. <u>See</u> Compl. 1–2. Plaintiff's argument is premised on the notion that military re-enactment qualifies as a "sport," and that firearms used in military re-enactment are therefore being used for "sporting purposes." <u>See id.</u> Plaintiff contends that military re-enactment is very popular, and that the ATF's determination is arbitrary and capricious. <u>See id.</u>

Plaintiff's disagreement with the ATF does not make its decision arbitrary or capricious. <u>See</u> <u>Springfield, Inc. v. Buckles</u>, 292 F.3d 813, 818–19 (D.C. Cir. 2002) (rejecting challenge to the

8

ATF's interpretation of "sporting purposes," given the ATF's broad discretion under section 925(d)(3)); Gun South, Inc. v. Brady, 877 F.2d 858, 863 (11th Cir. 1989) (noting that the executive branch receives "unusually broad discretion in applying section 925(d)(3)"). The record reflects that the ATF carefully considered the relevant factors and arrived at a rational conclusion in the form of the three-part test listed above. See generally Def.'s Mem. Exs. D & E. The ATF then rationally applied that test to the firearm at issue in this case. Regardless of whether that conclusion is the "best" one in the view of plaintiff or military re-enactors, it is not arbitrary and capricious.

Plaintiff also provides a detailed, technical comparison of various firearms, and contends that the ATF's three-part test is irrational because it provides too much weight to characteristics which give the firearm a military appearance. See, e.g., Pl.'s Resp. 16 ("It's all about 'military appearance' and nothing about actual suitability and adaptability . . . ."). Plaintiff touts his firearms expertise and contends that the ATF's interpretation of section 925(d)(3) is incorrect because it reflects a simplistic view. See id. at 13–23. However, even assuming that plaintiff qualifies as an expert on firearms, the ATF is entitled to arrive at a reasonable conclusion based on its own experts. See, e.g., Marsh, 490 U.S. at 378 ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.").

Ultimately, plaintiff is dissatisfied with the ATF's decision, and believes that his position is better policy. Plaintiff should direct this argument to Congress or the executive branch. This court does not set policy under 18 U.S.C. § 925(d). Congress has vested discretion in the executive branch, and the ATF has consistently interpreted section 925(d). It matters not whether the ATF's decision is ultimately a good one or whether the court agrees with the ATF's decision. See, e.g., Motor Vehicles Mfrs. Ass'n, 463 U.S. at 42–44; Alliance for Legal Action, 314 F. Supp. 2d at 541.

9

Rather, what matters is whether plaintiff has presented sufficient evidence to meet his burden of proving that the defendant's decision under section 925(d) in this case is arbitrary and capricious. He has not. Thus, defendant is entitled to summary judgment.

III.

For the reasons discussed above, the ATF's motion for summary judgment [D.E. 38] is GRANTED. In light of this conclusion, plaintiff's motion for order of production [D.E. 32] and motion for injunction and investigation [D.E. 47] are DENIED as moot. The clerk is DIRECTED to close this case.

SO ORDERED. This _2_ day of July 2008.

JAMES C. DEVER III
United States District Judge

10